We will move on to our second case set for argument today, which is Pacific American Title Insurance v. Evanston Insurance Company, case number 25-2705. May it please the Court, good morning, Your Honor. My name is Scott Batterman. I am counsel for Appellant Pacific American Title Insurance and Escrow Company. I will abbreviate that to PATICO, if the Court does not disagree with me, and also Ms. Lourdes San Nicolas. At this time, I would like to reserve five minutes for rebuttal. This is another duty to defend case. I am sure the Court is familiar with those. In analyzing this case, I think it would be helpful to start by breaking down the underlying action into its simplest terms. The underlying action is ULG Inc. versus Mary Guerrero. I refer to it as Mary because the record is rife with Guerreros and it gets a little confusing after a while, but in any event, Mary sold a piece of ULG property to Columbus Development Corporation and PATICO, through Ms. San Nicolas, acted as the escrow company for the transactions and in accordance with the instructions that they had received, they transferred the sale proceeds. Ultimately, it is a conversion claim. It is a conversion claim, but not against PATICO. It is a conversion claim against Mary. It was not covered by the policy. We do not agree that it is a conversion claim as far as our client is concerned. What is it as to your client? As to our client, again, breaking it down to its basic components. What did they allege was the claim against your client? Claim against my client was that they gave the money over to Mary when they knew they shouldn't have, but that last part isn't necessary to state a claim and the complaint is fully amendable to bring it under other theories. That is kind of where I am getting to. They did not bring a negligence claim. You are trying to suggest that they did bring a negligence claim. I am trying to suggest two things. I am trying to suggest that the facts in the complaint would still lend themselves to a negligence claim if they chose to bring it. Did they bring a negligence claim? They did not. The court, however, analyzed it in terms of negligence and under the cases that say that we are under the facts that the complaint is freely amendable to bring it within the policy, there is still coverage and that is the case here. But then you run up against cases in our court like the L.A. Lakers case and the Scottsdale Insurance case where amendment at a future date could be spec, you know, the fact that you could have amendment at a future date is not enough. There is a break in jurisdiction, in authority between different cases. I believe the cases that we cite are the ones that are more likely to have been approved in Guam. We are looking at, I guess, a combination of Guam law versus But Guam, correct me, I thought Guam followed California here. Largely. But the question is which cases do they follow and Can you point to any Guam law where that would be different under Guam law than California law? I don't think different so much as which part of California law do they follow. And in this case, we would suggest that we were looking at the specific case that I am referring to is National Union Fire Insurance Company versus Guam Housing Urban Renewal Authority, 2000 Guam 19, which we cite numerous times in there. One of the things that that court points out is that the claim isn't necessarily limited to the theory on which the plaintiff brought the case. Well, that may be true. It might not be limited to the theory, but it still has to be a claim that's in the case. I mean, part of the problem, it seems to me, with your argument is what is an insurance company supposed to do? When this gets tendered to the insurance company, the insurance company reads the complaint and they say, well, here's the claim that's in the complaint. This is what they're alleging. These are the claims that are being brought. That claim is covered or it's not covered. I mean, you seem to be trying to impose an additional duty on the insured to say, well, if the plaintiffs, and I'm not talking about in this case, in the underlying claim case, if the plaintiffs were smarter or if they pled it differently, then it could be covered. I think the duty does go beyond looking at the complaint. I think the cases indicate that there is a duty to look at all the facts and circumstances, not just the complaint that's present in some of the cases that we cite. But what it boils down to here is the bottom line of the case is that my client handed over money to somebody who is now alleged wasn't supposed to receive it. And whether they did so intentionally, whether they did so negligently, it's almost to be a less-included offense. And... Counsel, why does this even matter in light of the exclusion to paragraph 4B7? I apologize, I don't memorize things as well as I used to. That's the exclusion for conversion. We would argue that that exclusion only applies to conversion by members of the insured. Well, it says any conversion and then in the next sentence says, this exclusion shall apply irrespective of which individual party or organization actually or allegedly committed or caused in whole or in part the conversion. I get down to the reasonable expectations of a person reading that. They would assume that might be different parts of their own organization. But after closing, the conversion takes place three blocks down or three transactions down the road and that they would not assume, they would not reasonably, I apologize, they would not get... I'm from New York, not Hawaii originally, so sometimes my tongue gets ahead of me when it shouldn't. I apologize. I mean, this is a pretty broad exclusion for the things that are named, the conversion, misappropriation, commingling, defalcation, theft, disappearance, or insufficiency because it says, it begins with the words any and then it applies irrespective of which individual party or organization. Again, that's pretty broad language. Most exclusions go as broad as they can, Your Honor, but it still gets down to what is the reasonable expectation of a person and the reasonable expectation... These all sound like... Why would... What is the... Somebody... What could a party reasonably expect? How do you... How can you possibly read that and say, well, it doesn't cover, it doesn't cover this? You would read that to... The reasonable expectation is these are all forms of embezzlement or conversion or theft, which is the kind of thing you'd expect to happen inside the company or among different divisions. It's very difficult for somebody like Patico to detect and the insurance company may say, yeah, we're just not ready to insure that kind of risk, so it's so difficult to detect. We don't want our people, we don't want to pay for this kind of action. I think what it boils down to is that Patico can't make a claim based on its own employees or dishonesty. That's where you... Where it's like defalcation and conversion, they all seem to strike at the company itself. After the funds have left the company... They are surely covered. I'm trying to figure out why Ms. Guerrero's conversion is not covered here. Because she's not part of Patico. Well, that doesn't say anything about Patico here. It just says irrespective of which individual party or organization actually or allegedly committed or caused in whole or in part. An individual, a party or organization, that doesn't say anything about an insured there. It doesn't say anything about it, but what is the reasonable expectation of an insured that the insured is being covered for its own wrongs, but not rather... An insured is being covered for claims against it, but an insured won't expect that it will be covered if it commits a dishonest act. I'm not sure that that's a reasonable expectation. I mean, as Judge Bybee is pointing out, we start with the text, just like a statute for a contract. We start with the text. Is it reasonable to interpret this text contrary to what it flatly says? I believe it is, Your Honor, because it's reasonable to interpret it that a conversion or anything like this, it should be something within the company's own control. Once the funds have left their control and once the funds are... and the escrow has closed, a conversion down the road is entirely out of its hands, and it wouldn't be reasonable to expect that they would lose their insurance coverage... I don't know how to follow that argument, particularly where not only is it broad, but it provides us a list, as Judge Bybee has quoted a couple of times, individual, party or organization. The fact that party is in that list and things that are not parties are in that list makes your argument really difficult because there's no way to read that language as limited to the insured entity. I think the party... I think the insured reading that would see it as limited to the insured entity because they have no control over actions outside of themselves, and these kind of exclusions normally relate to the actions of the company. They're excluded if they or their employees commit improper acts. Once it's out of their control, they shouldn't expect that they lose their insurance coverage because some third party over whom they have no control... I understand that argument. I mean, I'm not even sure that that argument has a whole lot of sway here because the complaint here alleges that Pataco's employee knew that Mary did not have the authority to sell this property and conduct this transaction, and so even if sort of on an equitable ground the argument they are advancing had some sway, I'm not sure it does here because the allegations here are not that Pataco was completely innocent and had no idea that there was improper conduct happening. The allegation is that they did know. And that gets to the issue of the complaint and what the complaint could have been read can be amended to read that we are not directly involved in that, but that this is an act of negligence. And if you read the decision of the Guam court, you can see that the Guam court's reasoning grazed very deeply into the concept of negligence. And if you go to, for instance, page 628 of the record on appeal, the Guam court said if the escrow holder acts negligently, it is ordinarily liable for any loss occasioned by its breach of duty. That language is in there because I believe the Guam court is seeing this case at least in part as a negligence type of case or at least having the attributes of a negligence case. As Judge Bybee has pointed out, if we conclude that this exclusion applies, we never have to even address whether negligence is at issue in this complaint or not. Yes, Your Honor. If there's an overriding exclusion, that is an issue. But again, we would argue that the complaint could be upheld without any notice or knowledge of conversion on the part of Pataco through the negligence concept that the Guam court pushed and through the amendability of the complaint. And I think that's the reason why the Guam judge in his analysis spent so much time talking about duty and negligence and saying if the escrow holder acts negligently, it is ordinarily liable for any loss occasioned by its breach of duty. If the Guam court didn't see this at least in part as a negligence type of a case or having the capacity of a negligence type of case, that language would have had no place in the court's ruling. I think it's clear that the court was indicating that this is how the court views the case and it's the Guam judge in a Guam complaint, so I think that should be given some strength by this court in terms of interpreting what the complaint, the stretching or the reach of the complaint and its amendability to cover these issues. Do you want to reserve? Yes, Your Honor. Thank you. I have no idea how much. I apologize, Your Honor. You're fine. I mean, you're answering our questions. That's always a good thing. I was trying to answer your questions. I wouldn't be so bold as to predict as to say I actually answered them. Thank you, Your Honor. Good morning. My name is Daniel Formeller and I represent Evanston Insurance Company. I'm honored to be here this morning. The appellant would urge that the district court was wrong on the facts on the law and on the application of the law to the facts. When looking at coverage under a contract of insurance, the facts become the context within which the coverage decisions are made. We first look to the four corners of the complaint. There are two counts in this underlying complaint brought by ULG. One of them is for aiding and abetting a breach of fiduciary duty and one is for conspiracy. Right. But I think you kind of may have walked into a problem here because you said you look at the context of the facts here and that kind of rolls right into their argument, at least on the coverage issue, which is, yeah, but this wouldn't have taken a lot of thought to realize this ultimately was a negligence theory in some respects. So the insuring agreement here in the policy, which is a typical errors and omissions policy, is that a wrongful act must occur in the provision of professional services. Wrongful act is defined as a negligent error or omission.  The cases that, and Guam, your honor asked this earlier, Guam borrows very heavily out in California law, California cases discuss this issue of possibility or probability or practicality of coverage being manifested, even if it isn't manifested in the exact words of the complaint. But there isn't anything here in the facts of this case that gives one thought that a negligence kind of- Because the allegations, as you read them, are intentional acts. Correct. So even if, even if theoretically they could amend it, you agree they could amend it and add allegations that would have made this a negligence claim? Right. I mean, in my- But they haven't. Yeah. I'm not sure I, so do you think that they would have to add factual allegations or do you think that they would have to add just assertions of a different claim? No, they'd have to add, in our view, would have to add factual allegations that fit the actual facts. This is, this case is primarily transactional. Okay, so let me ask it this way. Let's say that we had the exact same facts and instead they asserted a negligence claim. Could your client move to dismiss that claim as like improperly pled because it's a negligence theory on facts that you think are only an intentional action? No. Okay, so if that's true, then why couldn't they amend and just assert a negligence claim based on the exact same facts that exist? They could amend if they could plead facts that actually meet what occurred during this transaction, but what occurred during this transaction was ultimately a conversion of over $2 million. Well, but by the non-party, but not by the insured, I mean, the insured, well, I guess it's open to debate, but the insured didn't convert it. They might have aided in the conversion, but that's not inconsistent with the negligence theory and I mean, as I understand California law, at least in that Scottsdale insurance case, even intentional actions under California law can form the basis of a negligence claim. Well, again, when we look at the context of this case, which is now over six years old, my experience and I'm sure most lawyers' experience is that lawyers are well-educated in knowing how to plead into coverage if that's what they wish to do. Here in our jurisprudence, great deference is given to claimants or plaintiffs as to the court that they wish to be heard in and the theories which they wish to present. Maybe we need to move on to the exclusion point because I think you've got, this is a difficult issue, it seems to me. I mean, the L.A. Lakers case says, well, we're not going to look to speculative future amendments. This one, it's not entirely clear to me if this fits within the speculative category. I mean, I understand that an insured can't look at this and start coming up with all the, you know, they can't like pretend they're the plaintiff's attorney in the underlying case and all the, spin off all the theories, but this one fits a little bit closer into what could have, you know, what maybe the insured should have been able to see. Then we get into, as Judge Bybee pointed out, the exclusion part. As we have indicated in the briefs, even if the insuring agreement had been triggered, the exclusion, B7, amended by the endorsement would take it out of coverage. The language in the exclusion is arising out of, which under California law is broadly interpreted, broadens the exclusion. In addition to which, any, means just literally any, in terms of what the action is, it is not temporarily restricted, so there is no time limit on when this may occur, nor does it indicate by whom it must occur. The focus is on the act itself and whether or not it occurred. And counsel, is this a pretty standard exclusion in policies? It is. It's extraordinarily broad, so it covers any theft. You're just not insured for any theft or embezzlement, for example. Because those, again, are intentional, quasi-criminal, you might say. Fraudulent, knowing the kinds of things that an errors and omissions policy typically would ensure in the first instance. This exclusion... So this provision was added later on, is that correct? It was originally in the policy, and then an endorsement was added to the policy that exchanged the language in the endorsement for the language that was originally in the policy form. Same thought. So help me understand why this exclusion would apply. If they had brought, let's say they had brought both an aiding and abetting conversion claim against Patico and a negligence claim against Patico, would this exclusion still apply? Or would you say, we have a duty to defend on the negligence claim, but we don't have a duty to defend on... Can you have a partial duty to defend in the case? No, because I think if the actions are linked together, as they would be in the hypothetical that you just rendered, then this exclusion would take it out of coverage. So the only way this would not apply, let's say they brought a straight-up negligence claim against Patico and a conversion claim against the third party, would the exclusion apply in those circumstances? Probably not. What I think is important here is when we think about the underlying transaction, what occurred here, an errors in remission policy typically would deal with a transposition error or an unfound lien on a piece of property in a title company's income. Well, but they could have easily... I mean, they didn't, but they could have easily said, you had a duty to figure out that she was converting this and you failed to do that and so you helped in an illegal transfer. And that would have... They could have pled this fairly easily as a negligence claim. Now, they didn't do that, but if they had done that, then the exclusion wouldn't have applied. So that's a very interesting theory here, that if we would just allow them to amend their complaint, they could have amended around the exclusion. Now, I'm not saying we should allow that at this point, but... I'm sorry for interrupting. Oh, no, go ahead. The case is far enough in its procedural progression where discovery is finished, the motions have been filed, and this case is setting itself up for trial. And again, thinking ahead, the charging instructions in this case are going to charge on intentional acts, not negligent acts. Well, I'm not sure the intention... I think under California law, the intentional act part only gets you so far because I don't think they would have had to... I think you've said this. They would not have had to make additional allegations of fact in the complaint. They could have just said, we're relying on these facts that we've alleged, and we're adding a negligence claim. They could have done that. They could have, Your Honor, but my point is the charging instructions to a jury would be, do you find that, Mr. St. Nicholas, and then fill in the blanks. And it would be aided and abetted or conspired to... Under the complaint. I understand I'm looking at an alternate universe.  But if they had amended... I mean, that's the irony here is they could have gotten around both issues, including the exclusion, if they just amended the complaint and added a negligence claim. Right. And that's why all of the cases that we've looked at, and I'm sure you've looked at too, talk about first the contract and then extrinsic facts known to the insurer as a sort of second element here. And our argument is that the appellant has failed in its burden under the insurance agreement and that even if it triggered, the exclusion would take this out of coverage. That's all I have. Thank you very much, Your Honor. Thank you, Your Honor, for doubting me again. The case is not yet set for trial, so that's not an issue in terms of amendability, but that's outside the record. But since Mr. St. Nicholas went outside the record, I wanted to clarify the record. What is the case you would point us to that would give us the authority to say, hey, you know, this could have been more carefully crafted by the plaintiff's attorney below, and it could have avoided the exclusion, and it could have theoretically fallen within the coverage. We're going to remand this so that they can replead that. Is there a case that you can point us to that gives us the authority to do that? I don't think this case can. I don't think this court can remand to the Guam trial court. But what it can do is look at cases like the CNA insurance case that we cite, which points out that a complaint that can be easily amended under the terms of the facts in the case can figure coverage if it's clear that that's a possible end. Even if we agreed with you on that, do you have a case then that says amendability could also apply to an exclusion? I don't think that that issue has directly come up. But I'd also point out that once you get into negligence here beyond conversion on the part of my client, because my client does not negligently convert anything. And again, I think we have to go back to insurance policies are not like other contracts. They're not read like other contracts. They're not read in terms of reasonable expectations of the insurer. They're read in terms of reasonable expectation of the insured. And then the insured would assume that this was the kind of clause that says if you and your own people are criminal, you can't do this. But if it's negligence, then we're not criminal and we're not involved in the conversion. OK, so let me ask you the same question. If you I mean, because there's two ways you could have amended this or I say you, I don't know whether you were counsel below. But the two ways that they could have amended the complaint or well, it could have been amended to say only negligence or it could be conversion and negligence. If it was conversion and negligence, would coverage be implicated there in your view? Under the law, if you have two causes of action in a complaint and one's covered and one's not, the entire complaint is covered. So they could win entirely on negligence. Was that a proven conversion? Except for the exclusion. Except for the exclusion. But would the exclusion exclude the entire complaint in that situation or just the one claim? I think we would argue that would only exclude the one claim. And again, under well-established law, if you have five causes of action in a complaint and only one of them is covered, the entire complaint gets defended. Thank you, Your Honor. Thank you to both counsel for your arguments. The case is now submitted.
judges: BYBEE, NELSON, FORREST